UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

C. D. BARNES ASSOCIATES, INC.,

      Plaintiff-Counter-Defendant,

      v.                            Civil Case No. 1:04-CV-850

GRAND HAVEN HIDEAWAY             Hon. Gordon J. Quist
LIMITED PARTNERSHIP, et al.          United States District Judge

      Defendants.

_____/

**RESPONSE OF THE SECRETARY OF HUD, ALPHONSO R. JACKSON, TO C.D. BARNES' MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT AND TO THIRD-PARTY DEFENDANT NATIONAL FIRE INSURANCE COMPANY OF HARTFORD'S MOTION TO INTERVENE AS A PARTY PLAINTIFF**

The Secretary of the United States Department of Housing and Urban Development ("HUD"), Alphonso R. Jackson, opposes the motion for leave to file a fourth amended complaint filed by Plaintiff C.D. Barnes Associates, Inc. ("C.D. Barnes") and the motion of third-party defendant National Fire Insurance Company of Hartford ("National Fire") to intervene as a party plaintiff (Dkt. #334).  The proposed amendments – a new request for consequential damages based on allegedly lost collateral contracts, and an equitable subrogation claim that is duplicative as to C.D. Barnes and premature as to National Fire – could not withstand a motion to dismiss.  Therefore, leave to amend should be denied.

## BACKGROUND

As the Court is aware, this case involves claims by C.D. Barnes, the general contractor, and numerous subcontractors and suppliers hired to construct an upscale multifamily housing development commonly referred to as Grand Haven Hideaway ("the Hideaway Project").  C.D.

Barnes seeks compensation for work allegedly performed on the Hideaway Project at or around the time the project owner defaulted on its loan obligations, in Spring 2004, when the project was about 70 percent complete.  In addition to suing the project owner for those sums, C.D. Barnes has also sued the Secretary, alleging that HUD's role in insuring the mortgage on the project created certain quasi-contractual or equitable duties to the general contractor.  The Secretary disagrees that it is liable to C.D. Barnes, with whom it had no contractual relationship, and contends that any equitable principles that courts may have applied in cases involving nonprofit owner entities do not apply to this case, which  involves a luxury housing development sponsored by a profit-motivated private partnership.

In December 2005, the Court addressed certain choice-of-law and jurisdictional issues when it granted in part and denied in part the Secretary's motion for summary judgment and dismissal for lack of subject matter jurisdiction.  (Dkt. #319.)  The Court held that it has jurisdiction to hear this matter, but granted summary judgment in favor of the Secretary with respect to Count I of C.D. Barnes' Second Amended Complaint, which asserted a construction lien foreclosure claim, and (as to the Secretary) dismissed Count VIII, which asserted a claim for misrepresentation.  In so ruling, the Court found that the Contract Disputes Act did not apply to C.D. Barnes' claims because its third-party beneficiary claim was not founded on a procurement contract with the government and because the remaining claims were "equitable" in nature.  (*Id.* at 19.)

The Court recently granted C.D. Barnes' Motion for Leave to File a Third Amended Complaint, which contains 14 counts against more than 20 parties.  (*See* Dkt. #329.)  The claims presently asserted against the Secretary in the Third Amended Complaint (Dkt. #330) are:

- Count I: Foreclosure of Construction Lien [still included, although the Court has granted summary judgment in favor of the Secretary on this claim];

- Count III: Equitable Lien/Constructive Trust

- Count IV: Third-Party Beneficiary

- Count V: Unjust Enrichment

- Count VI: Quantum Meruit

- Count VII: Promissory Estoppel/Equitable Estoppel

- Count VIII: Negligent and/or Innocent Misrepresentation [still asserted against the Secretary, although the Court has dismissed claim as against the Secretary]

- Count XIII: Quantum Valebant

- Count VIII [sic, should be XIV]: Action Against HUD for Undisbursed Mortgage Insurance Proceeds Pursuant to the National Housing Act, 12 U.S.C. § 1701 et seq.

C.D. Barnes now seeks to amend its complaint again to add a new request for damages and a new claim for equitable subrogation; National Fire also seeks to assert the equitable subrogation claim. In each of the active counts against the Secretary, and in the proposed new count, C.D. Barnes seeks to amend its request for damages to include a prayer for consequential damages: *See* Proposed Fourth Amended Complaint, Count III Prayer for Relief, seeking to add request for "additional damages resulting from lost business opportunities and impaired bonding capacity;" Prayers for Relief for Counts IV, V, VI, VII, XIII, XIV, XV, pleading "damages for lost business opportunities with respect to the use of such funds, impaired bonding capacity resulting in lost revenue from the inability to bid on or obtain a contract on certain construction projects."

In addition to the new request for lost profits damages, both C.D. Barnes and third-party defendant National Fire seek to add a new equitable subrogation claim against the Secretary and the

3

project owners (Proposed Count XV).  In this new claim, C.D. Barnes and National Fire assert the

right to recover payments they may make pursuant to the payment bond that C.D. Barnes posted to

cover subcontractors' and suppliers' claims on the project.  With respect to the Secretary, the theory

of liability for such payments appears to rest on the theories of liability asserted in the other claims

asserted against the Secretary.

## ARGUMENT

Although Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be freely

granted, "[a] court need not grant leave to amend. . .where amendment would be 'futile.'"  *Miller

v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005) (quoting *Foman v. Davis,* 371 U.S. 178, 182

(1962)).  "Where the proposed claim could not withstand a motion to dismiss or for summary

judgment, amendment should not be permitted."  *Herendon v. Michigan State Police*, 39 F. Supp.

899, 910-11 (W.D. Mich. 1999) (citing *Bower v. Jones*, 978 F.2d 1004, 1008) (7th Cir. 1992)).  *See

also Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041 (6th Cir. 1991).  In addition, where a

proposed amendment does not state a new, valid claim, the amendment is confusing, futile, and

should not be permitted.  *See, e.g., Lindell v. McCaughtry*, 2004 WL 2278741, *3 (7th Cir. Oct. 1,

2004) (plaintiff's claims were futile where they were duplicative or frivolous); *Cimino v. Glaze*, 228

F.R.D. 169, 173 (W.D.N.Y. 2005) (proposed amendment not permitted where it was duplicative).


I.      **The Court Should Not Permit C.D. Barnes to Plead A Request for Remote and
        Speculative Consequential Damages Allegedly Flowing from Lost Collateral Contracts.**

C.D. Barnes' central theory of liability against the Secretary in this case is premised on the

notion that HUD's role in providing mortgage insurance for the loan on the project created certain

4

"equitable" duties on the part of HUD.  (*See, e.g.*, Dkt.#291, C.D. Barnes' Resp. to the Sec'y Mot. for Sum. J., at 13 (C.D. Barnes has stated a claim for equitable relief. . . ."); at 16 ("C.D. Barnes is further entitled to seek equitable relief. . . ."; at 17, 19 (characterizing claims as "equitable claims"). As support for the notion that C.D. Barnes has some equity-based right of recovery against the Secretary, despite HUD's lack of contractual or statutory obligation, C.D. Barnes has cited a handful of cases decided in the 1970s, beginning with *Trans-Bay Engineers & Builders, Inc. v. Hills*, 551 F.2d 370 (1976).  In *Trans-Bay*, a contractor that had worked on a housing construction project sponsored by a non-profit corporation brought suit against HUD seeking payment of the retainage withheld during the construction period (10% of each progress payment withheld from the contractor until the project was completed).  The *Trans-Bay* court held that, based on the nature of the insurance program in which HUD insured the project, and particularly the non-profit status of the owner, the contractor had stated an equitable cause of action against HUD for the return of the withheld payments.  *See id.* at 196.  *But see Van-Tex, Inc. v. R. Pierce, Jr.*, 703 F.2d 891, 897 (5th Cir. 1983) (finding no equitable cause of action where mortgage was insured under a different program and sponsored by a profit-motivated partnership).

The rationale of *Trans-Bay* and the handful of cases applying it is thus grounded in notions of equity, which typically gives rise to a restitution remedy, not full contract damages.  *See, e.g., S.S. Silberblatt, Inc. v. East Harlem Pilot Block Building*, 608 F.2d 28, 41 (2d Cir. 1979) ("Our decision does not imply that if [the contractor] should succeed in establishing a claim for unjust enrichment it would be entitled to its damages for breach of contract.  Ordinarily, an award of restitution based on unjust enrichment, unlike contract damages, is not designed to put the aggrieved party in the

position where he would have been if the contract had been performed but to restore him to the status quo ante, regardless of the contract price or rate.").

Moreover, to the extent that Michigan law would permit a consequential damages remedy for certain of those claims, the Court should find that it does not apply. *See Conille v. Sec'y of Housing and Urban Dev.*, 840 F.2d 105, 113-14 (1st Cir. 1988).[1] In *Conille*, the First Circuit held that although a tenant could bring a claim against HUD for breach of the warranty of habitability, Massachusetts law could not be applied in its entirety to supply the rule of decision because it provided for an award of consequential damages: "The imposition of consequential damages upon the Secretary in this case could potentially impede the realization of the overall purpose of the NHA [National Housing Act]: the upgrading of national housing. . . .To impose upon the Secretary a consequential damages penalty for breaching duties implied under leases with his tenants would expose the federal government to unpredictable costs." *Id.* at 113-14. Thus, although Massachusetts law was a "starting point" in fashioning a federal rule governing the case, *id.* at 114, the court refused to adopt the portion of Massachusetts law that would afford the plaintiff a consequential damages remedy, limiting any recovery instead to restitution of rental payments. *See id. See also Chase v. Theodore Mayer Bros.*, 592 F. Supp. 90, 97 (S.D. Ohio 1983) (holding in breach of warranty of habitability case that "a compensatory damages remedy (over and above restitution of rents paid during the period in which an apartment is not 'habitable') is not warranted"); *cf. Mann v. Pierce*,

---

[1] The principal cases upon which C.D. Barnes relies for its claims against the Secretary suggest that federal common law, rather than state law, applies to those claims. *See, e.g., Trans-Bay*, 551 F.2d at 192 (discussing "the merits of the federal common law issue in this case"). If federal common law applies, in giving content to that law, under *United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979), the Court must consider the extent to which state or federal law should provide the particular rule of decision.

803 F.2d 1552, 1558 (11th Cir. 1986) (holding that sovereign immunity did not bar claim for consequential damages, but leaving open the question of whether such damages were available). Similarly, here, the Court should not permit a consequential damages remedy that would expose the fund created to implement the objectives of the National Housing Act to unpredictable costs.

Finally, the Court should not permit C.D. Barnes to seek damages based on "lost business opportunities" and "lost revenue from the inability to bid on or obtain a contract on certain construction projects" because such damages are too remote and speculative as a matter of law. Even in cases where a contractor had a direct contractual relationship with the government, such damages have not been permitted. *See, e.g., Rocky Mountain Constr. Co. v. United States*, No. 265-75, 1978 WL 8468 (Ct. Cl. Oct. 16, 1978) (unpublished, attached hereto as Exhibit 1) (claim for lost profits contractor "allegedly would have made on other contracts" deemed "too remote, indirect and speculative to permit recovery"); *Olin Jones Sand Co. v. United States*, No. 431-79C, 1980 WL 13211 (Ct. Cl. Nov. 21, 1980) (unpublished, attached hereto as Exhibit 2) ("damages which allegedly resulted when, because of defendant's actions, the bonding company or others refused to issue bonds on behalf of plaintiff on other contracts or work, thus crippling the contractor's ability to obtain new contracts or new work" held to be "too remote and speculative to be recoverable"); *accord Lewis Jorge Constr. Management, Inc. v. Pomona Unified School District*, 102 P.3d 257, 266-68 (Cal. 2005) (lost profits based on contracts allegedly not obtained due to impaired bonding capacity not recoverable as either general or special damages under California law).

In *Wells Cargo Bank, N.A. v. United States*, 88 F.3d 1012 (Fed. Cir. 1996), the Federal Circuit cited *Rocky Mountain* and *Olin Jones* approvingly, and noted the general rule that "'remote and consequential damages are not recoverable in a common-law suit for breach of contract. . .

especially. . .in suits against the United States for the recovery of common-law damages. . . .'" *Id.*
at 1021 (quoting *Northern Helex Co. v. United States*, 524 F.2d 707, 720 (Ct. Cl. 1975)).  The *Wells Fargo* court then reaffirmed the general rule that lost profits may be recoverable to the extent they have "accrued and grown out of the contract itself," but may not be recovered "'if they are such as would have been realized by the party from other independent and collateral undertakings, although entered into in consequence and on the faith of the principal contract. . .[because such profits] are too uncertain and remote to be taken into consideration as a part of the damages occasioned by the breach of the contract in suit.'" *Id.* at 1023 (quoting *Ramsey v. United States*, 101 F. Supp. 353 (Ct. Cl. 1951)).[2]

Because C.D. Barnes' attenuated lost profits damages claim is thus "legally insufficient," *Rocky Mountain*, 1978 WL 8468, at 2, C.D. Barnes should not be permitted to amend its complaint to add a request for them and expand the scope of discovery to encompass such matters.  *See id.* (rejecting contractor's request "that they be given the opportunity to show at trial that the loss of profits on the other contract was 'within the contemplation of the parties' when the government changed the contract" because claim was insufficient as a matter of law). *See also Olin Jones*, 1980

_____

[2]Although, as discussed above, Michigan law should not be applied to the extent that it would provide the kind of consequential damages remedy C.D. Barnes seeks in this case, the Secretary notes that in *Tempo, Inc. v. Rapid Elec. Sales & Serv. Inc.*, 347 N.W.2d 728, 733 (Mich. Ct. App. 1984), the Michigan Court of Appeals sustained an award of damages to a subcontractor based in part on its inability to bid on other contracts due to its impaired bonding capacity.  There, however, the party seeking the lost contracts damages had a contractual relationship with the party from whom it sought those damages, and therefore it may have been a legitimate question whether the parties reasonably contemplated at the time of contracting that such damages would flow from a contract breach.  Here, HUD had no contract with C.D. Barnes; HUD was the *lender's* insurer on the project. Any damages sought by C.D. Barnes from the HUD Secretary for lost contract bids flowing from the project owner's alleged failure to pay for work on the contract are too speculative and remote to warrant recovery as a matter of law.

WL 13211, at 3 ("we hold as a matter of law that, *even assuming such damages could be proven,*
they are too remote and indirect to be recoverable in this breach action") (emphasis added). Denying
C.D. Barnes leave to amend its complaint a fourth time would thus prevent the parties from having
to expend considerable resources on additional discovery related to the alleged consequential
damages, which C.D. Barnes is not legally entitled to recover.

## II.  The New Proposed Equitable Subrogation Claim Is Unnecessary, and Inappropriate as Asserted by C.D. Barnes.

Both C.D. Barnes and National Fire seek to add a claim against the Secretary and the project
owners for "equitable subrogation."[3] As defined in the cases upon which C.D. Barnes and National
Fire rely in seeking leave to add the claim, equitable subrogation is the doctrine providing that "a
surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his
right to be reimbursed." *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 136-37 (1962); *Teamsters
Health & Welfare Fund v. Net Constr., Inc.*, 334 F. Supp. 2d 751, 753 (E.D. Pa. 2004) (equitable
subrogation is based on the principle that "a surety which pays the debt of another stands in the shoes
of those whose claims it has paid"). Given the nature of the doctrine, C.D. Barnes cannot assert an
equitable subrogation claim: C.D. Barnes stands in its own shoes. To the extent that the Secretary
is deemed liable to C.D. Barnes on any of C.D. Barnes' existing claims, C.D. Barnes can pay any

---

[3]National Fire's motion describes National Fire as currently a "third-party plaintiff;"
however, National Fire is not currently a third-party plaintiff, but is a third-party *defendant* to several
claims asserted by subcontractors and suppliers. (*See* Dkt. Nos. 29, 62, 88, 204, 206, 244, 259, 276,
338, 339.) Therefore, rather than a motion to intervene in the action, a motion for leave to file a
cross-claim may be a more appropriate procedural vehicle for National Fire to assert its equitable
subrogation claim than a motion to intervene. *See generally Thomas v. Barton II, Ltd.*, 174 F.3d 636,
652 (5th Cir. 1999) (recognizing that some courts have been reluctant to permit third-party
defendants to assert cross-claims against original defendants, but rejecting such an approach as
"nonsensical").

claims by the subcontractors and suppliers out of the judgment awarded on those claims. In the event that the Secretary is found not liable to C.D. Barnes, there would be no basis for either C.D. Barnes or National Fire to recover a judgment based on equitable subrogation (given that equitable subrogation would permit recovery against the Secretary only to the extent that C.D. Barnes has a valid claim against the Secretary).

For the same reason, it also does not appear necessary for National Fire to assert an equitable subrogation claim against the Secretary. If C.D. Barnes succeeds on its claims against the Secretary, there will be no need for National Fire to make payments under the payment bond; if C.D. Barnes does not prevail on those claims, there is no basis for an equitable subrogation claim. Moreover, any equitable subrogation claim at this time is premature: upon information and belief, National Fire has not paid any claims made against the payment bond. *See, e.g., Earl Dubey & Sons, Inc. v. Macomb Contracting Corp.*, 296 N.W.2d 582, 585 (Mich. Ct. App. 1980) ("The right to subrogation accrues upon the payment of the debt."). In any event, whether brought by C.D. Barnes or by National Fire, any recovery on an equitable subrogation claim would necessarily be limited to the total amount of payments made under the bond, and therefore the request for consequential lost profit damages in the proposed new count is improper and should not be permitted.

## CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that the Court deny C.D. Barnes' Motion for Leave to File Fourth Amended Complaint and Third-Party Plaintiff National Fire Insurance Company of Hartford's Motion to Intervene as a Party Plaintiff.

10

Respectfully submitted,

MARGARET M. CHIARA
United States Attorney

Date: April 4, 2006                    /s/ Jennifer L. McManus
                                       JENNIFER L. McMANUS
                                       Assistant United States Attorney
                                       Post Office Box 208
                                       Grand Rapids, MI 49501-0208

.

11